## Provenchere's Appeal.

1. The intention of the testator of each will separately is to be gathered from its own four corners.

2. As a general rule, where the time or other condition is annexed to the substance of the gift and not merely to the payment, the legacy is contingent.

3. Where interest either by way of maintenance or otherwise is given to the legatee in the mean time, the legacy notwithstanding the gift itself be postponed, vests on the death of the testator.

4. A testator gave a fund in trust to pay the income to his daughter-in-law "during her widowhood and after her decease or marriage, to hold the same for the use of my grandchildren, A., L., F. and M., share and share alike, the income to be applied to their maintenance and education, and the capital

| 67 | 463 |
| 169 | 88 |
| 67 | 463 |
| 180 | 131 |
| 67 | 463 |
| 199 | 61 |
| 199 | 66 |
| 199 | 67 |
| 199 | 68 |
| 67 | 463 |
| 201 | 427 |
| 67 | 463 |
| e206 | ¹457 |
| 67 | 463 |
| 39SC | 331 |

to be paid to them as they respectively attain the age of twenty-one. In case the daughters marrying in their minority their shares to be paid at the time of their marriage." *Held*, that the legacies vested in the grandchildren at the death of the testator.

5. Patterson *v.* Hawthorn, 12 S. & R. 112, Buckley *v.* Reed, 3 Harris 83, McGill's Appeal, 11 P. F. Smith 46, remarked on.

February 9th 1871. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Philadelphia*: Of January Term 1871, No. 162.

This appeal arose from the decree of distribution of the balance found to be in the hands of William V. Keating, trustee under the will of Peter Provenchere, deceased, who died in 1825, having made his will dated the 8th of September in that year; by which, amongst other things, he devised a tract of land to the children of a son, and further devised and bequeathed as follows:—

" I devise and bequeath unto John Keating of Philadelphia and Jerome Keating of the county of Philadelphia, all my estate real and personal whatsoever and wheresoever (except the tract above mentioned), to have and to hold the same, &c., upon the following trusts :—Upon trust as to my books, &c., and everything contained in my chamber, for the sole and separate use of my daughter Amelia Marguerite, wife of Joseph Merat, notwithstanding her coverture, and to be entirely at her disposal :—and upon trust as to one moiety of the residue of my said estate, not above disposed of, to hold the same for the sole and separate use, as aforesaid, of my said daughter Amelia, &c., * * * and upon trust as to the other moiety to invest the same from time to time in some productive manner, at their discretion, and pay over the income or interest thereof to my daughter-in-law Maria Rutgers, during her widowhood, and after her decease or marriage to hold the same for the use of my grandchildren, Amelia, Lise, Ferdinand and Mary, share and share alike, the income to be applied to their maintenance and education, and the capital to be paid them as they respectively attain the age of twenty-one years. In case the daughters marrying in their minority, their shares to be paid at the time of marriage." * * *

Maria Rutgers Provenchere, the first-named legatee for life, died on the 11th of June 1869, a widow, intestate. Of the four grandchildren named in said will, Ferdinand and Amelia (now the wife of George Maguire) survived their mother and are still living. Mary, intermarried with A. S. Robinson, died August 22d 1840, intestate, leaving her husband surviving her, and one child, Mary, who died on the 10th of February 1866. Lise, intermarried with Frederick Saugrain, died March 25th 1868, leaving her husband surviving her, and four children, all of whom are of age. Both Mary and Lise had attained full age at the time of their respective

marriages. The four children named in the will were all the children of Maria Rutgers Provenchere and her husband, the testator's son.

H. E. Wallace, Esq., was appointed auditor to make distribution of the balance appearing on the trustee's account.

The balance for distribution, after deducting some payments, the expenses of the audit, &c., amounted to $12,435.56.

The auditor in conclusion reported : * * * " On the whole the auditor is of opinion that the interest of the children was entirely contingent, and did not vest until the death of Mrs. Maria Rutgers Provenchere, and then could only vest in the survivors of the four named in the will, to wit, Ferdinand Provenchere and Mrs. Amelia Maguire ; to each of whom he accordingly awards the moiety of the said balance of principal, being the sum of $6217.78."

The administrator of Mrs. Lise Saugrain and Mrs. Mary Robinson excepted to the report :—that the auditor should have reported one-fourth of the balance to each of them.

The Orphans' Court, Ludlow, J., delivering the opinion, sustained the exceptions, deciding that the legacies to the grandchildren were vested, and decreed that one-fourth of the fund be paid to each of the two grandchildren of the testator and to the administrator of those deceased.

Ferdinand Provenchere and Amelia Maguire appealed to the Supreme Court and assigned the decree of the Orphans' Court for error.

*Chapman Biddle*, for appellant.—Where the disposition of the produce or income is *distinct* from that of the capital, the interest in the latter will vest only at the time of its distribution : Billingsley *v.* Wills, 3 Atk. 219 ; Cloberry's Case, 2 Ventr. 242. Where interest or dividends of property are bequeathed for life, and the context of the will shows that no interest in the principal is intended to pass until after the determination of the life estate, the legatees over after the life estate, do not take vested interests during the continuance of the life estate : Batsford *v.* Kebbell, 3 Vesey 363 ; Bennett *v.* Seymour, Ambler 521 ; Houghton *v.* Whitgreave, 1 Jac. & W. 146 ; Leake *v.* Robinson, 2 Merivale 387 ; King *v.* King, 1 W. & S. 207. Where there is no gift but by a direction to pay, or divide and pay at a future time, or on a given event, or to transfer "*from and after*" a given event, the vesting will be postponed until after that time has arrived or that event has happened, unless, from particular circumstances, a contrary intention is to be collected : 2 Wms. on Exrs. 1108 ; Lamb *v.* Lamb, 8 Watts 186 ; Moore *v.* Smith, 9 Watts 403 ; Bayard *v.* Atkins, 10 Barr 22 ; Seibert's Appeal, 1 Harris 501 ; Bowman's Appeal, 10 Casey 19 ; Roberts's Appeal, 9 P. F. Smith 72 ;

17 P, F. SMITH—30

Cooper *v.* Scott, 12 Id. 141; Morley *v.* Bird, 3 Vesey 628; Stuart *v.* Bruce, Id. 631.

The court declined to hear *J. Sword* and *W. H. Rawle* (with whom was *P. McCall*), for the appellee.

.The opinion of the court was delivered, February 20th 1871, by SHARSWOOD, J.—There are no arbitrary or unbending rules in the construction of the words of a will. No two wills are in all respects alike. Where indeed the same precise form of expression occurs as may have been the subject of some former adjudication, unaffected by any indication of a different intention in other parts of the instrument, the courts, with a view to certainty and stability of titles, will follow the precedent. Counsel can thus be enabled to advise with confidence. Nevertheless; the cardinal canon still holds good, that the intention of the testator of each will separately is to be gathered from its own four corners. Hence almost every general rule has its recognised special exceptions, with exceptions to such exceptions which bring us back to the general. rule again, and this may be and sometimes has been carried even further in the vain attempt to generalize and classify all the decisions upon this most difficult and doubtful subject—the ascertainment of the intention from the words of a man, who in many cases had no intention at all, the question not being present in his mind at the time the words were used. These remarks are particularly applicable to the controversies which have arisen as to whether future legacies give present vested or contingent interests. The determinations are very numerous—not always reconcilable—and in the nature of the subject this was inevitable. Vice-Chancellor Sir Launcelot Shadwell has remarked very justly: " The question is one of substance and not of form. The question in all the cases has been whether the testator intended it as a condition precedent that the legatees should survive the time appointed by him for the payment of their legacies, and the answer to this question has been sought for out of the whole will and not in particular expressions:" Leeming *v.* Sherratt, 3 Hare 14. Thus it is true as a general rule, that where the time or other condition is annexed to the substance of the gift and not merely to the payment, the legacy is contingent; but a well-recognised exception to this rule is that where interest, whether by way of maintenance or. otherwise, is given to the legatee in the mean time, the legacy shall, notwithstanding the gift itself ·appears to be postponed, vest immediately on the death of the testator. This circumstance indicates an intention that the beneficial enjoyment shall begin at once, and payment only of the principal or capital be postponed. Where a legacy is given by a direction to pay when the legatee attains a certain age, the direction to pay may import either a gift at the

specified age or a present gift with a postponed payment, and if the interest is given in the mean time it shows that a present gift was intended: In Re Hart's Trusts, 3 De Gex & Jones 195. But to this exception, the English authorities show a still further exception within which it is supposed that the case which we now have under consideration falls. Where the gift of interest or maintenance is distinct, and the direction is to pay or transfer the principal sum at the specified age or upon the condition named, the legacy is contingent. Such, for example, is Watson v. Hayes, 5 Myl. & Cr. 125, where the sum of £25 yearly was directed to be paid for the maintenance and education of the legatee till twenty-one or marriage, when the sum of £500 was to be paid to her. Lord Cottenham said: "It is well known that a legacy which would upon the terms of the gift be contingent upon the legatee attaining a certain age may become vested by a gift of the interest in the mean time, whether direct or in the form of maintenance, provided it be of the whole interest, which clearly marks the principle that it is the gift of the whole interest which affects the vesting of the legacy. Such was the opinion of Sir William Grant in Hanson v. Graham, 6 Vesey 239, and Leake v. Robinson, 2 Merivale 363, and recognised by Sir John Leach in Vawdry v. Geddes, 1 Russ. & My. 203. It is therefore the giving the interest which is held to affect the vesting of the legacy, and not the giving maintenance; but where maintenance is given, questions arise, whether it be a distinct gift or merely a direction as to the application of the interest; and if it be a distinct gift, it has no effect upon the question of the vesting of the legacy." Whether in the previous case of Batsdorf v. Kebbell, 3 Vesey 363, there was such a distinct gift may perhaps be doubted, but certain it is that Lord Chancellor Rosslyn put his decision on that ground. It was the bequest of the dividends that should become due on £500 three per cent. bank annuities, until the legatee should arrive at a certain age, at which time the executors were to transfer to him the principal sum of £500 of three per cent. bank annuities for his own use. Lord Rosslyn said: "Upon the cases it appears that dividends are always a distinct subject of legacy, and capital stock another subject of legacy." But the reason of this is not given and is not very apparent. Lord Justice Turner, in Re Hart's Trusts, 3 De Gex & Jones 195, remarks, that Batsdorf v. Kebbell "seems to have proceeded on the marked distinction which was drawn between the dividends and the capital." This appears to have been the opinion of Chief Justice Gibson, for in King v. King, 1 W. & S. 207, he says: "A bequest of dividends is a clear exception to the general rule; for in Batsdorf v. Kebbell, Lord Rosslyn pronounced them to be no part of any general fund, but always a distinct subject of separate bequest. Cases of interest are more critical; yet in most of the preceding cases adduced in

support of the general rule, the first legatee had no more than the interest accruing on a mortgage or a trust fund.   And the cases instanced as exceptions to the rule are perhaps not properly such, but instances in which the rule of interpretation has been overborne by an opposing intention collected from all parts of the will.   But to preclude the operation of the rule in any case, such an intention must be clear, manifest and indisputable." Whether the rule to which I have adverted, that where the gift of the interest, income or dividends is distinct,—provided it be the interest, income or dividends of the fund itself subsequently given, and not something else,—ought to be adopted in this state, it is unnecessary to consider here.   Mr. Jarman remarks: "It must not too readily be assumed that any given case falls within the principle, as the courts have evinced no great inclination to extend it; and in truth, in some of the cases of this class, the difference of expression was very slight:" 1 Jarman on Wills 765, note.

It is not disputed that under the will of Peter Provenchere a moiety of the residue of his estate at the death of his daughter-in-law Maria Rutgers vested in his grandchildren Amelia, Lise, Ferdinand and Mary, share and share alike.   If not an express direct gift to them then, there is what is equivalent to it.   The trustees from that time are to hold for their use, to apply the income to their maintenance and education and the capital to be paid to them "as they respectively attain the age of twenty-one years." Indeed it could not be disputed after the cases of Schriver *v.* Cobeau, 4 Watts 130, and Roberts's Appeal, 9 P. F. Smith 70. In each of those cases there was first a gift of the interest or income and then a gift of the principal at a specified period. What is supposed to distinguish the disposition now in controversy from those cases is that the gift of interest or income is distinct to one person, and then afterwards of the principal to others. Hence the argument that as there is no beneficial enjoyment from the fund given to the legatees in remainder during the life of the first taker, there is no indication of any intention that the legacy to them shall vest before the time when that beneficial enjoyment begins.   But let us look at the whole disposition taken together. As we have seen, by concession the bequest of income to the grandchildren on the death of Mrs. Rutgers vested the principal of the legacy immediately in them, although not payable to them until they respectively attain the age of twenty-one.   Why then should the previous bequest of the same interest—not of another distinct subject—to Mrs. Rutgers prevent it from vesting on the death of the testator, in the same manner as if it had been a bequest of the principal to Mrs. Rutgers, and after her death to the grandchildren, in which case no one questions that all would be vested? It is not easy to see.   The testator certainly expressed no contingency of survivorship at that period in the gift to his grandchild-

[Provenchere's Appeal.]

ren, and there is no reason to imply it. The fund was bequeathed to trustees to invest the same " and pay over the income or interest thereof" to Maria Rutgers ; but that was of course the income or interest of that very fund which at her death or marriage it is conceded vested in the grandchildren. It might be different if it were a distinct gift not out of the same fund. In Patterson v. Hawthorn, 12 S. & R. 112, there was a distinct bequest of interest to the widow for life with a division of the principal at her death, and the legacies in remainder were held to be vested. That case has been followed in King v. King, 1 W. & S. 205 ; Reed v. Buckley, 5 Id. 517 ; Buckley v. Reed, 3 Harris 83 ; McGill's Appeal, 11 P. F. Smith 46. It is true that in Patterson v. Hawthorn, and in all these cases the bequest over was to the legatees " or their heirs," and the effect of these words was largely discussed. It might indeed be inferred from some parts of the opinions that those words controlled the determination as they were construed to mean " such persons as would be entitled as their representatives." I am convinced, however, upon a closer examination that if these words had not been employed, upon the principles and reasoning advanced the result would have been the same. If we strike out these words these cases are as nearly upon all-fours with this one as well can be. Instead of leading to the construction adopted they seem to have been regarded rather as a disturbing element. They had to be explained and reconciled with the idea of an immediate vesting. For it was plausibly contended that the bequest in remainder to the legatees or their heirs was an alternative one, which was irreconcilable with any vesting in the lifetime of the first taker. When it was settled that these words were a limitation, and not a distinct bequest over, the cases were all decided upon a broader principle directly applicable in the construction of the will before us. When the enjoyment of an entire fund is given in fractional parts at successive periods which must eventually arrive, the distinction betwixt time annexed to payment and time annexed to the gift becomes unimportant. In such a case it is well settled that all the interests vest together : 1 W. & S. 207 ; 11 P. F. Smith 51. Had the legacy here been direct to Maria Rutgers during widowhood, with remainder to the grandchildren, share and share alike, the interests of the grandchildren would have vested immediately on the death of the testator beyond any possible question : Balmain v. Shore, 9 Vesey 507 ; Monkhouse v. Holme, 1 Bro. C. C. 298, and other cases cited : 1 W. & S. 207. But under such a bequest Maria Rutgers would only be entitled to enjoy the interest or income, and it certainly ought to make no difference in the construction that the testator has expressed exactly its legal effect. It would present a very strange anomaly if this should be so held.

Decree affirmed, and appeal dismissed at the costs of the appellants.