## APPEAL OF C. E. REED, EXECUTOR.

.FROM THE DECREE OF THE ORPHANS' COURT OF ALLEGHENY COUNTY.

Argued October 26, 1887—Decided January 3, 1888.

118  215
124  460
118  215
159  526
118  215
189  590
118  215
199   67
199   68
118  215
201  427
118        215
31 SC  618
118    215
39SC 331

A testator provided that his executors should keep the proceeds of land sold invested at interest and pay over to each of his nine grandchildren one ninth of the interest thereof annually, "or if any of them have died, leaving heirs, then pay the same to said heirs, and at the full expiration of twelve years from the time of my decease, shall in like manner pay over the principal; but neither interest nor principal shall be liable to attachment": *Held*,

1. That the legacies to the grandchildren were substantive gifts, with time of payment postponed, but certain and unconditioned, and therefore vested at the death of the testator.
2. While it is true, as a general rule, that where the time or other condition is annexed to the substance of the gift and not merely to the payment, the legacy is contingent, yet, as an exception, when interest, whether by way of maintenance or otherwise, is given while the enjoyment of the gift of the principal is postponed, the legacy will vest immediately.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 89 October Term 1887, Sup. Ct.; court below, No. 184 September Term 1886, O. C.

The contention in the court below arose in the distribution of the proceeds of real estate in the hands of Thomas Morrow, trustee under the will of Thomas Morrow, deceased.

At the audit on December 7, 1886, before HAWKINS, P. J., the facts appeared: Thomas Morrow, the testator, died September 11, 1874, leaving one daughter and nine grandchildren, children of a deceased daughter. By his will he gave his executors charge of his real estate, directing that after they should realize from the rents, etc., sufficient to pay his debts, funeral expenses and $1,000 to a grandchild and $500 to a great-grandchild, then they should divide his farm and sell a described portion thereof in lots, at times and upon terms of which the executors were to be the sole judges. The fund for

distribution arose from the sale of the land, thus directed to be sold, and was to be distributed as required by the part of the will which was as follows:

When all that part of my farm east of the Plank Road has been disposed of, having nine (9) grandchildren, viz.: Thomas M., John K., Harry and Charles Blair, Fanny Eichbaum, Mary Reed, Jane Meanal, Eliza Rind and Eleanor Blair, all children of my dead daughter Nancy, who was intermarried with John Blair, deceased, I will and direct that the net proceeds arising from the sale of this part of my farm, together with the one fourth of an acre on western side of Plank Road including and surrounding my spring and spring house, which is to go with said part east of said Plank Road, shall be divided into nine (9) equal parts, and that my said executors or the survivor of them, shall for the period of twelve years from the time of my decease, keep said net proceeds invested at interest and pay over annually to each of my above-named grandchildren one ninth of the interest thereof annually, or if any of them have died leaving heirs, then pay same to said heirs, and at the full expiration of twelve years from the time of my decease, shall in like manner pay over the principal. But neither interest or principal shall be liable to attachment.

Mrs. Mary Reed, the wife of C. E. Reed, received several of the annual instalments of interest payable under the testamentary provisions quoted. In 1882, she assigned her share in the estate to A. Sitler, her husband joining, as collateral security for a balance of the purchase money of a drug store bought and afterwards conducted in her name. She died in 1885, leaving a will in which she appointed her husband her executor and gave to him a life estate in all her property, the remainder to her children.

The court decreed one ninth of the fund to be distributed to the husband and children of Mary Reed, deceased, adopting the construction of said provisions of the will according with an opinion of the court, OVER, J., filed February 24, 1883, on a former distribution in the same estate, and which was as follows:

The first question to be determined is whether distribution of two ninths of the fund is to be made to the administrators

Decree of Court below.

of the estates of Thomas M. and John K. Blair, or to their heirs. And this depends upon whether the legacies are to be considered as vested or contingent.

It seems clear that the words "have died," as used by the testator, have reference to the period of time indicated immediately preceding their use. If this be the case, this sentence of the will could be read as follows : " Or if any of them have died at the time the annual payment of interest is to be made, leaving heirs, then the payment shall be made to said heirs." The testator then directed that at the expiration of twelve years the executors " shall, in like manner, pay over the principal ": that is, that they shall pay one ninth of it to each of the grandchildren who are then living, and to the heirs of such as are dead the one ninth that such deceased legatee would have received if living.

If this be the proper construction of this clause of the will, it would seem that it was the intention of the testator that the legacies should not vest until the expiration of the twelve years. This construction is strengthened by the fact that his purpose evidently was to create a trust for the period of twelve years to protect the legacies from liability for the debts of the legatees, as it thus appears that the postponement of the enjoyment of the gift was on account of the character of the donees, which indicates his intention that the legacies should not vest until the expiration of the twelve years: McClure's App., 72 Pa. 418 ; and also by the further fact that there is no gift except as it is implied from the direction to pay over, which of itself, unless a contrary intention appears, makes the legacies contingent: McClure's App., supra; Chess's App., 87 Pa. 362.

This case is to be distinguished from Provenchere's App., 67 Pa. 464, as there the postponement of the gift was made to let in another interest, and, as stated in the opinion of the court, there was no contingency of survivorship expressed, nor was there any reason to imply it; whilst here, the postponement was not made to let in another interest, and the contingency of survivorship is expressed in the will.

The legacies being contingent, it follows that distribution is to be made to the "heirs" of John K. and Thomas M. Blair, deceased, and not to their administrators. As they left widows to survive them, the question arises as to whether they

can participate in the distribution as "heirs" of their deceased husbands.

By the terms of the will the testator's real estate was converted into personalty, and therefore the fund for distribution is personal. The word "heirs," when used in disposing of personalty, unless a contrary intent is indicated by the will, is construed to mean the persons entitled to distribution under the intestate act: Eby's App., 84 Pa. 241. There does not appear to be anything in this will indicating a contrary intention, and therefore distribution of one third of the legacies bequeathed to John K. and Thomas M. Blair is to be made to their surviving widows.

Thereupon Charles E. Reed, as executor of Mary Reed, deceased, took this appeal, assigning that the court erred in finding that the legacies to the grandchildren were contingent, and awarding the one-ninth of the fund, or $1,540.65, to the heirs of Mary Reed, deceased, or $256.77½ to Charles E. Reed, husband, and a like sum to each of the children of Mary Reed, instead of $586 thereof to A. Sitler, assignee, and $954.65 to Charles E. Reed, executor.

*Mr. James Bredin,* for the appellant:

1. Nemo est haeres viventis. The words in the bequest to the grandchildren, " or if any of them have died leaving heirs, then pay same to said heirs," have but the same effect and meaning which the words, " or their heirs," would have had if used in their stead: Patterson v. Hawthorn, 12 S. & R. 114. A will speaks as of the time of the testator's death; and the words "have died," are the proper words to indicate those who may die in the testator's lifetime: Converse v. Kellogg, 7 Barb. 594.

2. The language of the will shows an intent to give to the grandchildren, if living, with a capacity to transmit when dead, to such persons as may be their legal representatives, creating a limitation and not a bequest over. The language does not individuate grandchildren, but supplies a legal succession and indicates legal representatives: King v. King, 1 W. & S. 207; Buckley v. Reed, 15 Pa. 83; McGill's App., 61 Pa. 50; Womrath v. McCormick, 51 Pa. 504; Mull v. Mull, 81 Pa. 393; Muhlenberg's App., 103 Pa. 593.

3. The time fixed for payment was sure to arrive; it depended on no uncertain event, formed no part of the description of the legatees; and the suspensive expressions refer to the vesting of the enjoyment, not of the title: McClure's App., 72 Pa. 419. Moreover, the gifts to the grandchildren were substantive gifts, not implied only from the direction to pay; and, still further, notwithstanding the enjoyment was postponed, the legatees received the interest in the meantime: Chess's App., 87 Pa. 362; McClure's App., 72 Pa. 419; Millard's App., 87 Pa. 457; King v. King, 1 W. & S. 207; Provenchere's App., 67 Pa. 466.

*Mr. J. H. Baldwin*, for the appellees:

No one can read this will without reaching the conclusion that the testator intended to create a spendthrift trust for a term of years; cujus est dare, ejus est disponere: Ward's Est., 13 W. N. 283. There is no gift to the grandchildren except such as is implied from the direction to "pay over:" McClure's App., 72 Pa. 418; Chess's App., 87 Pa. 362. We rest the case upon the opinion of the court below.

OPINION, MR. JUSTICE PAXSON:

Thomas Morrow, the testator, died September 11, 1874. He left one daughter and nine grandchildren, children of a deceased daughter. By his will he gave his executors charge of his real estate, and directed that after they should realize from the rents, etc., sufficient to pay his debts, funeral expenses, and a legacy of $1,000 to a grandchild, and $500 to a great-grandchild, they should sell a certain described portion of his farm. The executors were to be the sole judges of the time when it should be sold as well as of the terms of sale. The will then provides: " That when all that part of my farm has been disposed of, having nine (9) grandchildren, viz.: Thomas M., John K., Harry and Charles Blair, Fanny Eichbaum, Mary Reed, Jane Meanal, Eliza Rind, and Eleanor Blair, all children of my deceased daughter Nancy, who was intermarried with John Blair, deceased; I will and direct that the net proceeds arising from the sale shall be divided into nine (9) equal parts, and that my said executors or the survivors of them shall for the period of twelve years from the time of my decease,

keep said net proceeds invested at interest and pay over annually to each of my above named grandchildren one ninth of the interest thereof annually, or if any of them have died leaving heirs then pay the same to said heirs, and at the full expiration of twelve years from the time of my decease shall in like manner pay over the principal. But neither interest or principal shall be liable to attachment."

The question for consideration is whether the legacies given to the grandchildren are vested or contingent. If vested, the executor or administrator of a deceased grandchild would take; if contingent, the heirs of such deceased grandchild would be entitled to the fund. The court below held that the legacies were contingent and distributed the fund to the heirs.

It will be observed that the testator after reciting the fact that he had nine grandchildren directs that the net proceeds arising from the sale of the farm shall be divided into nine equal parts, being one for each grandchild; that said proceeds shall be kept invested for twelve years after his death; that his executors shall pay over annually to each grandchild the one ninth part thereof, or if any of them " have died leaving heirs, then pay the same to said heirs," and after the expiration of twelve years to pay over to each the one ninth of the principal, etc. In other words, each grandchild was to have the interest on one ninth for twelve years and then receive the principal.

The general rule undoubtedly is that when a legacy is given to a person to be paid at a future time it vests immediately. But where it is not given until a certain future time it does not vest until that time, and if the legatee dies before, it is lost: Patterson v. Hawthorn, 12 S. & R. 112. It was said in Letchworth's App., 30 Pa. 175, that the law always inclines to treat the whole interest in property as vested rather than contingent, and therefore in case of doubt it declares the interest vested. And in McClure's App., 72 Pa. 414, it was said by the late Justice WILLIAMS: " The point which determines the vesting is not whether time is annexed to the gift, but whether it is annexed to the substance of the gift, as a condition precedent. Where there is an antecedent absolute gift independent of the direction and time of payment, the legacy is vested; but where there is no substantive gift and it is only implied from the direction to pay, the legacy is contingent, unless from partic-

ular circumstances or the whole face of the will a contrary in-
tention is to be collected." In general where a legacy is given
for an object which fails the legacy will be lapsed; as where a
sum of money is given to an infant for the purpose of binding
him apprentice, and he dies before the proper age. So where
a legacy is given to a female expressly for a marriage portion
and she dies before marriage, there is great reason for suppos-
ing it was not intended to give it to her representatives.

Here we have legacies given by a testator to his grandchil-
dren, and in case of their death to their heirs. It is true it is
not a direct gift in terms, but it is a substantive gift, notwith-
standing. They are to have the interest for twelve years and
then the principal is to be paid over. The time for the pay-
ment of the principal is postponed, but it is sure to come. And
it is to be noted that there is not in this will the faintest trace
of an intent in case of the death of any of the grandchildren
before the expiration of the twelve years, to give the shares of
those so dying to the survivors. The share of a grandchild
that shall "have died" is to go to his "heirs." It is contend-
ed that the words "have died" refer to the period of distribu-
tion. They are, however, appropriate words to designate a
death between the making of the will and the death of the tes-
tator. A will speaks as of the death of the testator. But we
regard this point as unimportant.

What did the testator mean by the word "heirs," as used in
this connection? I understand it to mean that in case of the
death of one of the nine enumerated grandchildren, the share
of such grandchild—that is, one of the nine equal parts set
apart for his or her use—shall be paid to such person or per-
sons as would be entitled to it as his or her legal representa-
tives by the law of the land; that is to say, it was not, in the
case of the death of one, to go to the survivors, but to be
considered as vested in the deceased child. This was the con-
struction placed upon the same words by this court in Patter-
son v. Hawthorn, supra, where a testator directed the proceeds
of his estate to be divided between his six sons and their heirs
upon the death of his wife. The same principle is recognized
in the later cases of King v. King, 1 W. & S. 205, and McGill's
App., 61 Pa. 46. In Mull v. Mull, 81 Pa. 393, where the
testator directed a sum of money to be "equally divided

among all my children or their legal heirs," this court held that the words "or their legal heirs" were used not to individuate grandchildren, but to supply a legal succession in the event of the death of any one, and meant simply legal representatives.

The gift of a legacy under the form of a direction to pay at a future time, or upon a future event, is not less favorable to vesting than a simple and direct bequest of a legacy at a like future time or upon a like event. The question is one of substance and not of form, and in all cases it is whether the testator intended it as a condition precedent that the legatees should survive the time appointed by him for the payment of their legacies; and the answer to this question must be sought for out of the whole will, and not in the particular expressions in which the gift is made: Leeming v. Sherratt, 2 Hare 14.

It was urged, however, that the words in the will—"but neither principal nor interest shall be liable to attachment"— coupled with the trust, indicate that the postponement of the gift was on account of the character of the donees, and an indication of an intent that the legacies should not vest until the expiration of the twelve years.

There is some force in this, but we do not think it sufficient to prevent the vesting of the legacies. It is at least doubtful, from a reading of the entire will, whether the testator had not in his mind the convenience of his estate rather than the character of the donees when he directed the postponement of the payment of the principal. And while it is true as a general rule, as before observed, that where the time or other condition is annexed to the substance of the gift and not merely to the payment, the legacy is contingent, yet it is equally true that a well-recognized exception to the rule is, that when interest, whether by way of maintenance or otherwise, is given to the legatee in the meantime, the legacy shall, notwithstanding the gift appears to be postponed, vest immediately on the death of the testator. This circumstance indicates an intention that the beneficial enjoyment shall begin at once, and payment only of the principal or capital be postponed. When a legacy is given by a direction to pay when the legatee attains a certain age, the direction to pay may import either a gift at the specified age or a present gift with a postponed payment; and if the interest is given in the meantime, it shows that a present gift

was intended: Provenchere's App., 67 Pa. 463; In re Hart's Trusts, 3 DeG. & Jones, 195.

While this is a close case, and not by any means free from doubt, we are of opinion that the testator intended to give each of his grandchildren a vested interest in the one ninth share referred to, and that distribution must be made to the personal representatives of such as are deceased. And were it even more doubtful than it is, we would be constrained, by the rule above referred to, to resolve the doubt in favor of vesting.

> The decree is reversed at the costs of the appellees, and distribution ordered in accordance with this opinion.