## Waln's Estate.

*Wills—Construction—Vested and contingent interests.*

When after a bequest in trust for his widow for life, testator directs property to be equally divided into as many shares as there may be parties interested therein, at their mother's death—grandchildren to represent a deceased parent's share—and creates spendthrift and separate use trusts with powers of appointment for seven of his children nominatim, followed by an absolute bequest to an eighth child and his heirs, whose share is to be increased by deductions from two others

who are indebted to him, the eighth child takes a vested legacy, and if he dies during his mother's lifetime, his share will go to his executor.

Argued Feb. 1, 1910. Appeal, No. 7, Jan. T., 1910, by Jacob S. Waln, Executor of S. Morris Waln, deceased, from decree of O. C. Montgomery Co., Oct. T., 1909, No. 33, dismissing exceptions to adjudication in Estate of Edward Waln, deceased. Before Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Reversed.

Exceptions to adjudication. Before Solly, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in affirming the adjudication.

*John Lewis Evans*, for appellant.—A remainder is always considered vested rather than contingent if the words of the will creating it are capable of such a construction: Long's Est., 39 Pa. Superior Ct. 323.

When the enjoyment of an entire fund is given in fractional parts, at succession periods which must eventually arrive, the distinction betwixt time annexed to payment, and time annexed to the gift, becomes unimportant and all the interests vest together: Provenchere's App., 67 Pa. 463; Chew's App., 37 Pa. 23; Thomman's Est., 161 Pa. 444.

*Montgomery Evans* and *Rowland Evans*, for appellee.— Whether a legacy will be held vested or contingent, depends upon the question whether the condition is annexed merely to its payment or to the gift itself. If there is no separate antecedent gift independent of the direction and time for payment, the gift, being inferred from the direction to pay, the legacy is contingent.

The above rule of construction is recognized in the text-books, and has always been the law in Pennsylvania: Moore v. Smith, 9 Watts, 403; McClure's App., 72 Pa.

414; Appeal of Lumberman's National Bank, 13 W. N.
C. 191; Reichard's App., 116 Pa. 232; McBride v. Smyth,
54 Pa. 245; Gilliland v. Bredin, 63 Pa. 393; Seibert's
App., 13 Pa. 501; Fairfax's App., 103 Pa. 166; Coggins'
App., 124 Pa. 10; Raleigh's Est., 206 Pa. 451; Middle-
ton's Est., 212 Pa. 119; Reiff's App., 124 Pa. 145.

OPINION BY MR. JUSTICE BROWN, May 16, 1910:

Edward Waln died October 2, 1887. His will was ex-
ecuted in the May preceding his death, and the follow-
ing are the material parts of it: "I give, devise and be-
queath all my estate, real, and personal, which I own, or
may acquire, and whether vested, or contingent, and
held in severalty, or in common, to my esteemed friend,
Richard W. Clay, Esq., upon the special trusts, and con-
ditions following, viz., to collect the rents, issues, profits,
and income thereof, and after deducting the legitimate
expenses of managing the same, to pay over, from time
to time, the net receipts to my widow, Ellen C. Waln,
for her own use, comfort, and disposal, during her life.
And at, and after the termination of the said life estate,
then in trust, to select three disinterested gentlemen, to
part, and divide the said estate, into as many shares, as
there may be, parties interested therein, at their mother's
death, the shares to be of as nearly equal value, as pos-
sible, and the child or children of any deceased child to
represent the deceased parent's share.

"And on such division being made, then by amicable
arrangement among themselves, or by lot, to transfer,
and convey, and appropriate, to each party a or one
share on the special trusts following, viz.: To retain the
shares of my daughters, Sally M. Waln, Ellen C. Harri-
son, wife of Charles C. Harrison; Esther N. A. Graham,
wife of Peter M. Graham, and Rebecca McM. Waln, to
keep the same judiciously invested, to collect the rents,
issues, profits and income thereof, and to pay the same
after deducting the legal expenses to each of my said
daughters, for their respective separate uses, benefits,

and disposal, and free from the debts, interference, or
control, of any husband, or any one else, during their
respective lives and on the termination of their several
life estates, then to convey and assign, each one's share,
to such person or persons, on such terms, estates, limi-
tations & conditions, etc., as they may respectively by
will direct, limit and appoint, and on failure to so ap-
point, then to their respective right heirs.

"And as to the shares of my sons Jacob S. and Edward
Waln, Junior (subject to the deductions being first made
from each, to be added to the share of my son S. Morris
Waln, as specified hereinafter) to retain the said shares
in trust for their exclusive uses benefits comfort and
maintenance, free from and not liable for the debts, legal
proceedings, judgments, or executions of any creditor
during their respective lives, with like power of appoint-
ment by will, as is hereby conferred on my daughters
shares, and on failure to so appoint, then to their respec-
tive right heirs.

"And as to the share of my son Nicholas Waln, to re-
tain the same, in trust, for the same uses, limitations,
and conditions, and power, as are conferred on the shares
of my sons Jacob S. and Edward, except that his share,
is to be exempt from any deduction or contribution, like
theirs, to, and in favor of the share of my son, S. Morris
Waln.

"And as my desire is, to divide my estate, as equally
as possible among my children, and to let 'bye-gones be
bye-gones,' and as my son S. Morris Waln, with affec-
tionate generosity, and in noble self-sacrifice loaned to
his brothers Jacob and Edward, who were then partners
in the mercantile firm of S. Morris Waln & Co. at the
time of 1883 & 1884, when the disastrous bankruptcy
overwhelmed that firm, the whole of his then fortune as
realized from the legacies of his deceased uncle, the late
S. Morris Waln, which loan amounted to Forty nine
thousand, six hundred and thirty one dollars ($49,631)
none of which has been repaid, and for which sum I ob-

tained a Judgment for him, in the Court of Common Pleas for Phila. No. 1, to March Term, 1885, No. 821, I hereby will and direct that a sum equal to fifty per cent of the value of each share of my sons Jacob S. and Edward, be deducted from each before conveying or transferring, in trust for them, as aforesaid, their respective shares, which deductions of 50 per cent from each, I will to be added to my son, S. Morris' share, hoping that my estate may eventually prove valuable enough with the said deduction to repay to him the foregoing indebtedness but without any interest, and not entirely absorb the shares of my sons Jacob S. and Edward.

. "Of course it is my will that should either of my sons Jacob or Edward, pay or satisfy, in whole, or in part, at, or before, or after the taking effect of this will, the said indebtedness that then a credit or release pro tanto be made, and the respective deductions, as aforesaid, be reduced accordingly. And as to the share of my son S. Morris Waln, so increased by the foregoing additions to convey, and assign, the same, absolutely to him, and his heirs forever."

Ellen C. Waln, the widow, died May 13, 1909, and all of the testator's children except S. Morris survived her. He died in 1888, unmarried and without issue, and the executor of his will claims a one-eighth interest in his father's estate, augmented by fifty per cent of the shares of Jacob S. and Edward. This claim was disallowed by the court below on the ground that the interests passing to the testator's children were not vested, but contingent upon their surviving their mother, and, as S. Morris Waln died before her, nothing passed from his father's estate to that of his own. The view of the court below, that the interests of the children were contingent, was based upon the direction of the testator that at the termination of the life estate of his wife the trustee should select three disinterested gentlemen to part and divide the estate into as many shares as there might be parties interested therein at his widow's death, the shares to be

of as nearly equal value as possible and the child or children of any deceased child to represent the deceased parent's share. But the testator did not stop here, and from the immediately succeeding clauses there is a clearly expressed intention that the interests of his children in his estate should vest at the time of his death, the enjoyment only being postponed until the death of his wife. "There are no arbitrary or unbending rules in the construction of the words of a will. No two wills are in all respects alike. . . . The cardinal canon still holds good, that the intention of the testator of each will separately is to be gathered from its own four corners:" Provenchere's App., 67 Pa. 463. Applying this canon to the will before us, there can be no doubt from its own words how it should be interpreted, and we need enter into no discussion of the preference of the law for a vested rather than a contingent remainder.

When the testator wrote his will and at the time of his death he had eight children, four sons and four daughters. After the direction that his estate should be divided he directed that the trustee should retain a share for each of his four daughters, naming them, for her separate use during life, with a power of appointment over it by will. Three shares of the estate are directed to be held in trust for Jacob S., Edward and Nicholas, fifty per cent of the shares of the first two to be added to that given to S. Morris, for the reason stated by the testator. The eighth share was to be transferred by the trustee to S. Morris absolutely, to him and his heirs forever. The testator was definite as to the method of division, though somewhat indefinite as to who were to participate, as he describes the participants as "parties interested therein;" but no indefinite words were used when he proceeded to say who should each receive one-eighth of his estate. Enumerating his eight children by name, he gives to each one of them a share, to be held in trust for seven of them and to be given to the eighth absolutely at the termination of the life estate of their

mother.   Nothing could be plainer than the intention
of the testator that one-half of each share given to Jacob S.
and Edward should be paid to S. Morris, to reimburse
him for what he had paid for them.   The words of the
will are that there shall be deducted from "each share"
of the two sons, Jacob S. and Edward, one-half, which is
to be added to the share of S. Morris, and the direction is
that if, after the will took effect, that is, after the death
of the testator, Jacob or Edward should pay or satisfy,
in whole or in part, the said indebtedness to S. Morris, a
credit or release pro tanto should be made and "the re-
spective deductions" from their shares should "be re-
duced accordingly."   If payments had been made by
Jacob and Edward after the will had gone into effect,
how could there have been reductions from the deductions
directed to be made from their "shares" unless they had
shares?   The manifest intention of the testator of abso-
lute reimbursements to S. Morris would have been de-
feated by the construction given to his will by the court
below if Jacob and Edward, or either of them, had died
during the lifetime of the widow, for in such event nothing
could have been taken from shares which passed to their
children and added to that of S. Morris if he had sur-
vived his mother.   The testator declares his intention to
be "to divide my estate, as equally as possible among
my children," and from the whole will it is most clear
that each child took a vested interest at his death.   The
clause upon which the court below relied, standing alone,
is to be read as giving a vested interest to each child,
subject to be divested only by death during the lifetime
of the widow and leaving children.   Only one, S. Morris,
did die, and he left no children.   Again, the law presumes
that the testator did not contemplate possible intestacy
as to his estate after the death of his widow.   The pre-
sumption is just the opposite, and yet the construction
placed upon the will by the court below would have re-
sulted in intestacy if his sons and daughters had all died
during the lifetime of the widow without leaving chil-

dren. The decree of the court below is reversed, and the record remitted, that distribution may be made in accordance with the view herein expressed, the costs to be paid out of the fund in the hands of the trustee.