A. M. STANDISH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BEATRICE M. STANDISH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3949, 3950.   Promulgated March 19, 1945.

*R. Clarence Ogden, Esq.*, for the petitioners.
*T. M. Mather, Esq.*, for the respondent.

998

OPINION.

Van Fossan, *Judge*: We consider first the issue as to the correct amount of the bad debt against the Yorkville Lumber Co. which became worthless in 1940. The petitioner claimed a loss of $4,240, based on the recovery of $760 as the partnership's share of the amount paid to the trustee in that year. The respondent charged against the loss of the original loan of $5,000 the entire amount ($1,975.31) of the payment held by the trustees.

The petitioner's contention is supported by the record. The evidence is uncontroverted that on December 16, 1940, the trustee had sold all of the assets of the company and that the company had no other source from which its debt to the petitioner and Hickey could be paid. The trustee held the fund for the benefit of the petitioner and Hickey. The worthlessness of the debt was definitely established at that time. Hickey and the petitioner were the creditors to whom the amount of

the recovery was payable in the proportions then known and accepted as the basis of the division between them.

The subsequent suit resulting in judgment and the adjustment made between the petitioner and Hickey's executor relating to items not in the record are not pertinent to the issue. The respondent has overlooked the fact that the recovery in 1940 was for the benefit of both the petitioner and Hickey and has misstated the amount of the "proceeds of liquidation." The partnership is entitled to the deduction of the bad debt in the sum of $4,240.27 ($5,000 minus five-thirteenths of $1,975.31). If any part of the ultimate net recovery in 1943 represented income to petitioner, it was a matter for accounting in that year.

The second issue calls into question the validity of a trust instrument executed by Miles Standish on June 17, 1932, and also the effect of a testamentary trust established by the will of Miles Standish. The petitioner contends that the provisions of the first trust were void as violating the rule against perpetuities and that no testamentary trust was set up as to the residue devised to Allan Standish under paragraph fourth of the will. He argues that the will makes a direct devise of one-half of the estate to him as held by the California court. He does not discuss the status of the other half, but appears to concede that the will created a trust as to it.

The respondent argues that no judicial determination of the validity of the *inter vivos* trust (of June 17, 1932) has been made; that the trust did not violate the rule against perpetuities; that in case the trust should be declared invalid by this Court the property would revert to Miles Standish, subject to the testamentary disposition made by the will; and that the fact that the beneficiaries entitled to the trust income may ultimately receive the corpus does not invalidate the trust.

It appears clear that if the trust of June 17, 1932, did not violate the rule against perpetuities, as contended by the petitioners, a valid trust was created, which trust fixed the ownership of the property in question and accordingly fixes the liability for income taxes and the rights to losses arising from such property. For aught that appears, the trust has been in effect for all the years since its creation and has been recognized by the parties, the present instance being the only time its validity has been questioned.

It is elemental that the law favors the vesting of estates. It is also elemental that the law tends to support the intention of a grantor or a trustor, if such intention can be ascertained. Here it is obvious that by the trust Miles Standish was planning the future of his son Allan and his wife and their two children. The same intention involving the same parties is evident in his will dated two years prior. By the trust he left the income as at the date of his death (which occurred five days later) 51 percent to Allan Standish, 17 percent to Beatrice

M. Standish (Allan's wife), and 16 percent each to the two grand-children, Patricia and Beatrice. This was to continue until the youngest grandchild became 30 years of age, when the trustee was to convey the corpus of the trust to the beneficiaries then living, in the same proportions as the income payments. Any additional grand-child living at the date of the death of the trustor was to share equally with those then living.

In Simes Law of Future Interests, vol. II, p. 103, appears the following:

Sec. 356. Intermediate Gift of Income.

An intermediate gift of the income to the legatee or devisee who is to receive the ultimate gift on attaining a given age is an important element tending to show that the gift is vested and not contingent. This would seem to be for the reason that the gift of income shows that the testator intended the legatee or devisee to take some benefit from the gift of the principal immediately on the testator's death, and that the postponement of possession was merely for the benefit of the donee. The same presumption in favor of the vested char-acter of the gift obtains where only a portion of the income is to be given for maintenance.

The following statement from the opinion of the Pennsylvania Supreme Court in *Appeal of Reed*, 118 Pa. St. 215; 11 Atl. 787, is also in point:

* * * And while it is true as a general rule, as before observed, that where the time or other condition is annexed to the substance of the gift and not merely to the payment, the legacy is contingent, yet it is equally true that a well recognized exception to the rule is, that where interest, whether by way of maintenance or otherwise, is given to the legatee in the meantime, the legacy shall, notwithstanding the gift appears to be postponed, vest immediately on the death of the testator.

It is clear that there was a vesting in possession of the beneficiaries of the income of the trust as of the date of the grantor's death. We are of the opinion that by the terms of the trust, under the law, there was also, as of that date, an immediate vesting of interest in the corpus or remainder. The fact that as of the date of the trust there was a possibility of divesting of the estates of the grandchildren and a redistribution to accommodate an after-born child does not affect the vesting or make it contingent. It is our opinion that, looking to the four corners of the trust, the grantor contemplated immediate vest-ing of interest of the corpus of the property in the several beneficiaries.

The consequence of our ruling that the property had vested as of the date of the grantor's death is that petitioners are not entitled to deduct the loss sustained on the Coos County and Douglas County properties.

The situation is not, in anywise, affected by the decree of the Cali-fornia Court of Probate entered in 1942. This adjudication dealt with

wholly different specified property and does not purport to deal with or affect in any way the property here in question.

The record discloses no evidence to warrant the imposition of penalties for "negligence or intentional disregard of rules and regulations," as charged by the respondent. The petitioners disclaimed any such act or intent. The notices of deficiency reveal no more than the ordinary difference of opinion between taxpayers and the Treasury Department. Therefore, no such penalties will attach.

Reviewed by the Court.

*Decision will be entered under Rule 50.*