## Byerly Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner and Hunter, JJ.

The facts appear from the following adjudication of

HUNTER, J., Auditing Judge.—This trust arose under deed of Francis P. Byerly, dated December 19, 1935, whereby settlor transferred cash to the accountant in trust to pay the net income therefrom to or for the benefit of his son, Robert Bennett Byerly, until he attained the age of 28 years, or until his death, whichever term shall be the shorter, with discretion in his

trustee to expend as much of the principal as might be needed for his benefit, and upon the said Robert Bennett Byerly attaining the age of 28 years, the trust to terminate and the principal together with all accumulations to be paid over and distributed to the said Robert Bennett Byerly.

The account is filed because of the death of Robert Bennett Byerly on May 8, 1945, thus terminating the trust.

A photostatic copy of certificate of death dated November 13, 1946, issued by the Department of National Defence Army, Ottawa, Canada, certifies that Lieutenant Robert Byerly of the Canadian Army "was reported missing in action on the 8th day of May 1945 and no further information concerning him being available, he is for official purposes presumed to have been killed in action on that date."

According to the deed of trust Robert Bennett Byerly would have attained the age of 28 years on March 20, 1946, but, as pointed out above, he died on May 8, 1945.

The deed specifically states that Robert Bennett Byerly's right to income is to cease in the event of his death before reaching the age of 28 years, but does not specifically provide for the distribution of principal upon the happening of this event.

With respect to distribution of principal the deed provides:

"*In further trust*, upon the attainment by the said Robert Bennett Byerly of the full age of twenty-eight years, to pay over and distribute the corpus or principal of the trust hereby created, together with all accumulations thereon and additions thereto, or so much thereof as may remain in the hands of Trustee, absolutely, unto the said Robert Bennett Byerly, free and clear of any and all Trusts under this Deed."

The question is presented whether the remainder was vested in Robert Bennett Byerly and therefore now payable to the executor of his will, or contingent upon

his attaining the age of 28 years, and hence payable to settlor's executor.

Francis P. Byerly, settlor, is deceased, and the Central Hanover Bank and Trust Company as executor of his will, claims the corpus of the trust and the income accrued subsequent to May 8, 1945, on the ground that the gift of the corpus to settlor's son was contingent upon his attaining the age of 28 years, and upon his death prior thereto, the corpus reverted to settlor.

The Girard Trust Company of Philadelphia, executor of the estate of Robert B. Byerly, settlor's deceased son, contends that the remainder was vested in the son and now passes to it under the latter's will.

Where, as here, there is no gift over upon the death of the beneficiary before attaining the prescribed age, it is obvious that the gift was intended to be for the sole benefit of the son. No other person either by name or as a class is mentioned in the deed: Allen Estate, 347 Pa. 364.

On the other hand, it is contended that the direction to pay over and distribute the corpus of the trust upon the attainment by the son of the full age of 28 years, makes the gift contingent, because it contemplates living persons at the time when payment is to be made.

It is true as a general rule that where the time or other condition is annexed to the substance of the gift, and not merely to the payment, the legacy is contingent, but a well-recognized exception to this rule is that where interest, whether by way of maintenance or otherwise is given to the legatee in the meantime, the legacy shall, notwithstanding the gift itself appears to be postponed, vest immediately on the death of testator. This circumstance indicates an intention that the beneficial enjoyment shall begin at once, and the payment only of the principal or capital be postponed: Provenchere's Appeal, 67 Pa. 463; Nicholson Estate, 355 Pa. 426.

In Middleton's Estate, 212 Pa. 119, it was held, after discussing interests which were contingent upon the

recipient arriving at a designated age that "when the subject of the gift is separated from the rest of the estate and vested in trustees for the benefit of the legatee, the gift, although in form contingent, will be held vested: Branstrom v. Wilkinson, 7 Ves. 421; or where interest is given to the legatee till the time of payment arrives: Hanson v. Graham, 6 Ves. 239. See also Roberts's Appeal, 59 Pa. 70."

Counsel representing the executor of deceased settlor offered in evidence (Central Hanover Bank Exhibit "A") a photostatic copy of deed of trust dated August 13, 1937, between F. P. Byerly and the bank, for the purpose of showing that settler therein intended a vested gift by expressly providing for every contingency which might arise in the disposition of the corpus of the trust, thereby avoiding any question with respect to the taxability of the fund as part of settlor's estate. This exhibit was objected to as being irrelevant. I admitted it in evidence subject to the objection and noted an exception. I now sustain the objection to this exhibit for the reason that in my opinion it is irrelevant as a guide to construing the deed now under consideration.

It is further contended that where a settlor provides a spendthrift clause in the deed it is a strong indication of an intention, because of the character of the legatee, that the corpus should not vest until the son arrived at the specified age of 28 years.

"An analysis of the nature of a spendthrift trust shows that it does not affect the quantum of the estate created by the trust, but only protects the cestui que trust in its enjoyment": Smith Estate, 110 Pa. Superior Ct. 469, 475.

After careful consideration of all the provisions of the deed of trust, the briefs of counsel, and the law and decisions applicable thereto, I have concluded that the interest of Robert Bennett Byerly was vested and not contingent, and I so find.

*Rawle & Henderson* for Central Hanover Bank and Trust Co., executor of will of Francis P. Byerly, decd., for exceptant.

*Krusen, Evans & Shaw,* contra.

*Barnes, Dechert, Price, Smith & Clark,* for accountant.

LADNER, J., March 19, 1948.—Of the exceptions filed all but the second raise the single question whether the auditing judge erred in ruling that the trust deed before him for construction conferred a vested interest in the presumptively deceased son of the donor. We are all of the opinion that the learned auditing judge's ruling is correct and we can add nothing with profit to his convincing adjudication on this phase of the case.

Exception no. 2 charges the auditing judge erred in refusing to admit in evidence a copy of another deed of trust made by the same donor but for the benefit of donor's wife and son and executed *nearly two years after* the deed whose construction was before the court. The language of the exception is somewhat obscure but, as we understand it, exceptant's learned counsel's purpose was to show by the offer that the donor knew how to grant a vested and contingent interest when he was so minded.

Counsel seeks to justify his offer by the familiar "armchair rule" as expounded in Jackson's Estate, 337 Pa. 561, 565 and cases therein cited, where it was said:

" 'In determining the testator's intention the Court should place itself as nearly as possible in his position, and hence . . . should take into consideration the situation of the testator and the facts and circumstances surrounding him *at the time the will was executed* (emphasis supplied). . . . the state of the property devised', the amount and character of the property when the testator made his will (McGlathery's Est., 311 Pa. 351, 166 A. 886), and 'the testator's relation to the beneficiaries, their condition or necessities': . . .

'You may place yourself, so to speak, in the testator's arm-chair and consider the circumstances by which he was surrounded . . . to assist you in arriving at his intention.' . . ."

We know of no case, however, and none has been cited, which under this rule would permit us to interpret the language of an instrument before us by drawing inferences from different language in a different deed that sets up a different trust, and executed at a different time. For obvious reasons we ought not to extend the "armchair" rule that far.

All exceptions are dismissed and the adjudication is now confirmed absolutely.